**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Haresh Mirchandani and Indra Mirchandani,<br><br>    Plaintiffs,<br><br>vs.<br><br>BMO Harris Bank NA; TradeCor Desert Sky II, LLC,<br><br>    Defendants. | No. 11cv2286-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Emergency Motion for a Temporary Restraining Order ("TRO") against Trustee's Sale and for Remand to State Court. For the reasons discussed below, the motion is denied in part.

**BACKGROUND**

On November 14, 2011, Plaintiffs Haresh and Indra Mirchandani filed this suit in Superior Court in Maricopa County. (Doc. 1 Ex. B). The dispute arises out of there 2007 loans that a predecessor to Defendant BMO Harris Bank ("BMO") issued to SS Quality Fuels, LLC ("Quality"), an LLC of which Plaintiffs are the sole members. Plaintiffs were the Guarantors on the three loans (collectively "the loans"), and the loans were secured with deeds of trust in a piece of property owned by Quality ("the property"). Defendant TradeCor Desert Sky II, LLC ("TradeCor"), later acquired the bank's interest in the deeds of trust

securing the loans, which are now in default, and has scheduled a trustee's sale for November 29. Plaintiffs allege that Defendant BMO entered the loan terms incorrectly, overcharged loan fees, and sold Plaintiffs an additional "swap" loan that Plaintiffs did not understand. (*Id.*). They allege that BMO and TradeCor conspired to sell the Deeds of Trust to TradeCor so that TradeCor could foreclose upon the property, which is adjacent to other property owned by TradeCor. (*Id.*).

M & I Marshall Bank ("M & I"), predecessor to BMO, initially issued a term loan to Quality in the amount of $1,960,000 and a Revolving Line of Credit ("RLOC") of $150,000 on December 11, 2007. (Doc. 7, Ex. B). The next day, the bank sold Quality a "swap agreement," whereby it could swap its interest obligations with a counter-party on a similar amount of indebtedness. (Doc. 1, Ex. B(3)). On December 23, 2008, Quality fell behind on its loans, and on September 1, 2009, entered into a forbearance agreement with M &I. (Doc. 7, Ex. B). In the agreement, M & I agreed to forbear its right to foreclose on the property, and Quality released "Lender and Lender's . . . partners, predecessors, successors and assigns," from "any and all actions and causes of action . . . of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising, . . . including but not limited to matters in any way directly or indirectly arising out of or in any way connected to this Agreement, the Notes, the Deeds of Trust, the Loan Agreement, the Guarantee Document and/or any related documents." (Doc. 7, Ex. B).

On April 19, 2010, TradeCor purchased the Lender's position in the Notes; on April 20, their attorney wrote Plaintiffs to notify them that Quality was in default. (Doc. 7, Ex. D). TradeCor then sued Quality and Plaintiffs in Maricopa County Superior Court for breach of contract. Neither Quality, which had filed for bankruptcy protection in August of 2010, nor Plaintiffs responded to TradeCor's motion for summary judgment, and judgment was entered against them on January 20, 2011. (Doc. 7, Ex. 4). On November 7, 2011, the bankruptcy court denied Quality's reorganization plan and lifted the automatic stay, allowing TradeCor to exercise its rights in the property. (Doc. 7, Ex. 7) *see In re SS Quality Fuels, LLC,*

2:10-bk-25372-GBN (Bankr. D. Ariz. 2010).

The trustee's sale had been scheduled for November 16, 2011, but was moved to November 29 when Plaintiffs filed for a TRO in state court. The state court set a preliminary injunction hearing for November 22. On November 21, BMO removed the case to federal court, claiming that diversity jurisdiction was proper because Tradecor, the only Arizona defendant, was fraudulently joined, and that federal question jurisdiction was proper because the state-law claims in the complaint "implicate significant federal issues." (Doc. 1).

**DISCUSSION**

**1. Legal Standard**

A plaintiff must establish four elements in order to be granted a TRO, including "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."*Winter v. Nat't Res. Def. Council,* 55 U.S. 7, 22 (2008), *see* FED. R. CIV. P. 65. (emphasis in original). Although irreparable injury must always be likely, the Ninth Circuit balances the other elements using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Should the moving party demonstrate a very high likelihood of injury, the likelihood of success on the merits may be relaxed. In such cases, an injunction may be granted when "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Wild Rockies*, 632 F.3d at 1134–35, quoting *The Lands Council v. McNair*, 57 F.3d 981, 987 (9th Cir. 2008).

**2. Analysis**

Plaintiffs argue that removal was improper because the court lacks subject-matter jurisdiction, but both parties agree that the Court has the power to issue an injunction while it considers its own jurisdiction.

No restraining order may issue unless the moving party can "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 55 U.S. at 23 (emphasis

- 3 -

in original). Aside from their motion for a TRO, all of Plaintiff's claims are for money damages. (Doc. 1, Ex. B at 11–19). A property owner "is likely to suffer irreparable harm by losing his property," but Plaintiffs here are not the property owners. *Fromkin v. Indymac Bank FSB*, 2010 WL 2541167 (D. Ariz, June 18, 2010). Quality, the owner of the property, has had the opportunity to assert its rights to the property in its bankruptcy proceedings, and it has not been successful in doing so. Plaintiffs claim that they have standing to assert a claim on Quality's behalf because it is "closely held and owned 100% by the Mirchandanis, hence a loss of their unique, income producing property would result in a direct injury to them." (Doc. 9). Even if the Mirchandanis have standing to pursue a claim based on the loss of income associated with the property, such a loss would not constitute irreparable harm. "Economic damages are not traditionally considered irreparable because the injury can later be remedied by a monetary award." *Jones v. Bank of America, N.A.*, 2010 WL 2572997 (D. Ariz. 2010) (citing *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 568 F.3d 847, 852 (9th Cir. 2009). Plaintiffs are the sole members of the LLC that owns the property, but they do not own the property themselves; if Quality loses the property, it will not cause the Plaintiffs irreparable harm.

To the extent that Plaintiffs argue that losing the opportunity to have their scheduled state court preliminary injunction hearing is itself irreparable harm, the Court is willing to accept as true everything Plaintiffs stated that they were planning to present during that hearing. Plaintiffs were prepared to call witnesses to testify as to the connection the business has to their livelihood, its value, and its opportunity to produce income. Even granting these facts, Plaintiffs would not have shown that they themselves would suffer irreparable harm, rather than the loss of an income stream recoverable as damages. *See Cal. Pharmacists*, 568 F.3d at 852. The opportunity to be heard on the issue in District Court provided Plaintiffs with "some kind of hearing," and they nevertheless failed to demonstrate that they qualify for equitable relief. *Mathews v. Eldridge*, 434 U.S. 319, 333 (1976).

**CONCLUSION**

Since Plaintiffs have not demonstrated that they are likely to suffer irreparable harm,

no injunctive relief may be issued. The court will issue an order in response to the motion for remand and, if necessary, the motion to dismiss, in due course.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Remand (Doc. 9) is **denied in part**. No temporary restraining order will issue, and an order on the motion to remand will be ruled on in due course.

Dated this 28th Day of November, 2011

*A. Murray Snow*
G. Murray Snow
United States District Judge