**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Haresh Mirchandani; Indra Mirchandani, | No. CV-11-2286-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| BMO Harris Bank NA; TradeCor Desert Sky II LLC, | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion for Remand (Doc. 9). For the reasons stated below, the motion is granted.

**BACKGROUND**

On November 14, 2011, Plaintiffs Haresh and Indra Mirchandani filed this suit in Superior Court in Maricopa County. (Doc. 1, Ex. B). The dispute arises out of three 2007 loans that a predecessor to Defendant BMO Harris Bank ("BMO") issued to SS Quality Fuels, LLC ("Quality"), an LLC of which Plaintiffs are the sole members. Plaintiffs were the Guarantors on the three loans (collectively "the loans"), and the loans were secured with deeds of trust to a piece of property owned by Quality ("the property"). Defendant TradeCor Desert Sky II, LLC ("TradeCor"), later acquired the bank's interest in the deeds of trust securing the loans, which are now in default, and scheduled a trustee's sale for November 29, 2011. Plaintiffs allege that Defendant BMO entered the loan terms incorrectly,

overcharged loan fees, and sold Plaintiffs an additional "swap" loan that Plaintiffs did not understand. (*Id.*). They allege that BMO and TradeCor conspired to sell the Deeds of Trust to TradeCor so that TradeCor could foreclose upon the property, which is adjacent to other property owned by TradeCor. (*Id.*).

M & I Marshall Bank ("M & I"), predecessor to BMO, issued a term loan to Quality in the amount of $1,960,000 and a Revolving Line of Credit ("RLOC") of $150,000 on December 11, 2007. (Doc. 7, Ex. B). The next day, the bank sold Quality a "swap agreement," whereby it could swap its interest obligations with a counter-party on a similar amount of indebtedness. (Doc. 1, Ex. B(3)). On December 23, 2008, Quality fell behind on its loans, and on September 1, 2009, entered into a forbearance agreement with M &I. (Doc. 7, Ex. B). In the agreement, M & I agreed to forbear its right to foreclose on the property, and Quality released "Lender and Lender's . . . partners, predecessors, successors and assigns," from "any and all actions and causes of action . . . of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising, . . . including but not limited to matters in any way directly or indirectly arising out of or in any way connected to this Agreement, the Notes, the Deeds of Trust, the Loan Agreement, the Guarantee Document and/or any related documents." (Doc. 7, Ex. B).

On April 19, 2010, TradeCor purchased the Lender's position in the Notes; on April 20, their attorney wrote Plaintiffs to notify them that Quality was in default. (Doc. 7, Ex. D). TradeCor then sued Quality and Plaintiffs in Maricopa County Superior Court for breach of contract. Neither Quality, which had filed for bankruptcy protection in August of 2010, nor Plaintiffs responded to TradeCor's motion for summary judgment, and judgment was entered against them on January 20, 2011. (Doc. 7, Ex. 4). On November 7, 2011, the bankruptcy court denied Quality's reorganization plan and lifted the automatic stay, allowing TradeCor to exercise its rights in the property. (Doc. 7, Ex. 7). *See In re SS Quality Fuels, LLC,* 2:10-bk-25372-GBN (Bankr. D. Ariz. 2010).

The trustee's sale had been scheduled for November 16, 2011, but was moved to

1  November 29 when Plaintiffs filed for a TRO in state court. The state court set a preliminary
2  injunction hearing for November 22. On November 21, the evening before the scheduled
3  hearing and three days before Thanksgiving, BMO removed the case to federal court,
4  claiming that diversity jurisdiction was proper because TradeCor, the only Arizona
5  defendant, was fraudulently joined, and that federal question jurisdiction was proper because
6  the state-law claims in the complaint "implicate significant federal issues." (Doc. 1).
7  Plaintiffs filed an emergency motion in this Court to prevent the sale of the property. This
8  Court held a hearing on November 28. Because Quality, rather than Plaintiffs, was the owner
9  of the property, Plaintiffs could not show that selling the property would personally cause
10 them "irreparable harm," and the motion for a TRO was denied. (Doc. 13).

**DISCUSSION**

**1.   Legal Standard**

13  "The party asserting jurisdiction has the burden of proving all jurisdictional facts."
14 *Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen.*
15 *Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A case may be properly removed from
16 state court if the district court could have exercised original jurisdiction. 28 U.S.C. § 1441(a)
17 (2006). Federal jurisdiction is proper in all cases that present a federal question on the face
18 of the complaint. 28 U.S.C. § 1331 (2006).  In addition, federal question jurisdiction will lie
19 when claims are filed under state law but nevertheless "turn on substantial questions of
20 federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that
21 a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Eng'g*
22 *& Mfg.*, 545 U.S. 308, 312 (2005).The question of federal law must be substantial, however,
23 and "the mere presence of a federal issue in a state cause of action does not automatically
24 confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S 804,
25 813 (1986).

26  In addition, the Court has subject-matter jurisdiction to rule on cases in which
27 defendants and plaintiffs are citizens of different states and the amount in controversy is
28 greater than $75,000. 28 U.S.C. § 1332 (2006). The Supreme Court has interpreted § 1332

to require complete diversity between parties, where "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). However, if a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," the district court may claim that the party is fraudulently joined, and assert jurisdiction. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

Although ordinarily courts determine federal jurisdiction "solely by an examination of the plaintiff's case, without recourse to the defendant's pleadings," when "fraudulent joinder is an issue, we will go somewhat further." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). In *Ritchey*, the Ninth Circuit was asked to find that a defendant was fraudulently joined because claims filed against that defendant had been filed after the appropriate statute of limitations. Because it found that "the fact that the statute of limitations is a kind of procedural bar, and not one which relates to the merits of the case," it found that the defendant was fraudulently joined and asserted jurisdiction. *Id.* at 1319. The Court noted, importantly, that fraudulent joinder inquiries do not rely on "whether those defendants could propound defenses to an otherwise valid cause of action," and cited approvingly a Supreme Court case that "refused to find fraudulent joinder where a misjoinder of parties was claimed by the defendant that was trying to remove the action." *Id.* at 1318–19 (citing *Alabama Great S. Ry. Co. v. Thompson,* 200 U.S 206, 218–19 (1906)). It further noted that joinder is not fraudulent when "the assertion made by the removing defendant 'went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants.'" *Ritchey*, 139 F.3d at 1318 (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153 (1914).

In considering whether a defendant is fraudulently joined, "[t]he Court must therefore walk a very fine line: it must consider the merits of a matter without assuming jurisdiction over it." *Davis v. Prentiss Props. Ltd.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999). Courts in the Ninth Circuit have thus concluded "that some room must exist between the standard for dismissal under Rule 12(b)(6), for example, and a finding of fraudulent joinder." *Id.* at

1115. Even "where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court." *Ballesteros v. American Standard Ins. Co. of Wisc.*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006) (quoting *Albi v. Street & Smith Publ'ns.*, 140 F.2d 310, 312 (9th Cir. 1944)). Even a "'glimmer of hope' that plaintiff can establish claim is sufficient to preclude application of fraudulent joinder doctrine." *Ballesteros*, 436 F. Supp. 2d at 1072 (quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). In evaluating a number of decisions on fraudulent joinder from the Ninth Circuit and elsewhere, the district court in the Central District of California has concluded that "a federal court's fraudulent-joinder consideration should be akin to an application of Rule 11." *Davis*, 66 F. Supp. 2d at 1115. This analysis has since been cited approvingly by three other districts within the circuit, and disagreed with by none. *See, e.g.*, *Bellecci v. GTE Spring Commc'n Corp.*, 2003 WL 151538 (N.D. Cal Jan. 14, 2003), *Lujan v. Girardi & Keese*, 2009 WL 5216906 (D. Guam Dec. 29, 2009), *Jennings-Frye v. NYK Logistics Americas Inc.*, 2011 WL 642653 (C. D. Cal. Feb. 11, 2011). This Court finds the Rule 11 analogy helpful in determining whether a plaintiff's inability to recover is "obvious according to the settled rules of the state." *McCabe*, 811 F.2d at 1339.

**2.     Analysis**

BMO claims that removal is proper because 1) Plaintiffs's state law claims rely on substantial questions of federal law, 2) Plaintiffs fraudulently joined TradeCor because the forbearance agreement precludes them from suing TradeCor, and 3) Plaintiffs' fraudulently joined TradeCor because their claims are precluded by the state court judgment in TradeCor's favor. For the reasons discussed below, all three claims fail.

**A.     Federal Question Jurisdiction**

Plaintiffs allege that BMO breached the duty of good faith and fair dealing. In support of this allegation, they claim that BMO breached certain agreements with them, and then failed to file a Suspicious Activity Report as required by 12 C.F.R. § 21.11 (1989). (Doc. 1, Ex. B. ¶ 68). The regulation in question requires that banks "file a Suspicious Activity Report

- 5 -

1 when they detect a known or suspected violation of Federal law or a suspicious transaction 2 related to a money laundering activity or a violation of the Bank Secrecy Act." 12 C.F.R. § 3 21.11(a). BMO argues that in order to rule on this claim "the Plaintiffs will have to establish 4 that BMO violated 12 C.F.R. § 21.11, and their claim therefore poses a federal question." 5 (Doc. 1 at 8). Additionally, BMO claims that because Plaintiffs reference certain federal 6 statutes and rules in their claim for a Temporary Restraining Order, that claim presents a 7 federal question. (Doc 1 at 8). Since the Temporary Restraining Order has already been 8 denied, only BMO's claim regarding the good faith and fair dealing claim will be considered.

9 A state court claim which relies on a defendant's violation of a federal rule does not 10 necessarily give rise to federal question jurisdiction. *See Merrell Dow*, 478 U.S at 813. 11 Rather, federal question jurisdiction only lies when "the state action discloses a contested and 12 substantial federal question," and even then "the federal issue will ultimately qualify for a 13 federal forum only if federal jurisdiction is consistent with congressional judgment about the 14 sound division of labor between state and federal courts governing the application of § 15 1331." *Grable & Sons*, 545 U.S. at 313–14. The Ninth Circuit has denied federal jurisdiction 16 when a party seeking removal has failed to show that a claim "necessarily depends upon 17 construction of a substantial question of any federal . . . law." *Ultramar America, Ltd. v.* 18 *Dwell,* 900 F.2d 1412, 1414 (9th Cir. 1990). It has otherwise only found that purported state 19 claims alleging violation of a federal law are removable when the referenced federal law 20 "*unequivocally* confers *exclusive* jurisdiction on the federal courts" *Sparta Surgical Corp.* 21 *v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211–12 (9th Cir. 1998) (emphasis 22 added); *see also California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 841 (9th Cir. 23 2004).

24 BMO does not claim that "the meaning of the federal statute is in dispute" at all, let 25 alone that interpreting the rule involves resolving a contested and substantial federal 26 question. *Grable & Sons*, 545 U.S. at 315. It further does not claim that 12 C.F.R. § 21.11 27 unequivocally confers exclusive federal jurisdiction, and it is not clear from the text of the 28 regulation that it does so. Federal question jurisdiction is improper.

- 6 -

### B. Forbearance Agreement

Plaintiffs signed the forbearance agreement with M & I Bank on September 1, 2009, and amended it on December 1, 2009, then again in February 2010. BMO acknowledges that the forbearance agreement prohibits only suits complaining of conduct committed before it was signed. (Doc. 1 at 5). It states that although "the complaint contains allegations concerning conduct after February 2010, those allegations are aimed at BMO, not TradeCor." (*Id.*). In fact, numerous allegations in the complaint aimed at TradeCor are for conduct it engaged in after the last amendment of the forbearance agreement. (Doc. 1, Ex. B ¶¶ 46–63, ¶¶ 106–110).[1] The forbearance agreement does not render TradeCor fraudulently joined.

### C. Claim Preclusion

Finally, BMO argues that the claims against TradeCor should have been raised as compulsory counterclaims in a suit TradeCor filed in Arizona state court for breach of contract, and that they are precluded by the judgment in that case. (Doc. 1 at 6). Plaintiffs allege that the earlier suit does not preclude their claim. They argue that the judgment was in effect a default judgment entered after their attorney failed to appear, the claims at issue were different, and no findings were issued. (Doc. 9).

Parties' motives are only minimally relevant to a fraudulent joinder inquiry because fraudulent joinder is "a term of art," and does not require a finding of actual fraud. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Nevertheless, here some discussion of parties' actions is instructive. BMO removed this matter on November 21, the evening before a scheduled preliminary injunction hearing in state court, three days before a national holiday, and one week before the scheduled trustee sale. (Doc. 1). The scheduled hearing in state court therefore never took place, and Plaintiffs were left to file a motion for an emergency TRO on Wednesday, November 23, the day before Thanksgiving, in the hopes of receiving a hearing on Monday to prevent the sale of the property on Tuesday. At that

---

[1] BMO identifies a number of "exceptions," to its statement that all claims against TradeCor predate the agreement, all of which in fact involve conduct not covered by the agreement.

- 7 -

1  hearing, TradeCor's attorney stated that the sudden removal "caught me a little bit off
2  guard," but at the time he had been guarded enough to consent to the removal and to file a
3  motion to dismiss in federal court the day after the removal was filed. (Doc. 16 at 35; Doc.
4  7). TradeCor has filed no briefings asserting that it was fraudulently joined, and declined the
5  opportunity to be heard on the jurisdictional issue at the TRO hearing. (Doc. 16 at 9).
6  Although fraudulent joinder is usually employed against Plaintiffs who have joined an
7  improper party solely to keep a federal case in state court, here Defendants, rather than
8  Plaintiffs, appear to have used procedural tactics to obtain a substantive advantage.

9        In Arizona, "[t]he defense of claim preclusion has three elements: (1) an identity of
10  claims in the suit in which judgment was entered and the current litigation, (2) a final
11  judgment on the merits in the previous litigation, and (3) identity or privity between parties
12  in the two suits." *In re General Adjudication of All Rights to Use Water in the Gila River*
13  *System and Source*, 212 Ariz. 64, 69–70, 127 P.3d 882, 887–88 (2006). Compulsory
14  counterclaims are those that arise from the same transaction or occurrence that is the subject
15  matter of the opposing party's claim. Ariz.R.Civ.P. 13(a). Compulsory counterclaims are
16  subject to the principles of res judicata. *Levin v. Hindhaugh*, 167 Ariz. 110, 111, 804 P.2d
17  839, 840 (App.1990). *Lansford v. Harris*, 174 Ariz. 413, 419, 850 P.2d 126, 132 (App.
18  1992).

19        Plaintiffs argue that their claim is not precluded by TradeCor's breach of contract suit
20  because it involved different claims, no findings were issued, and the case was not litigated
21  on the merits. (Doc. 9). Plaintiffs' complaint alleges that TradeCor conspired with BMO to
22  transfer the deeds of trust while aware that they had been recorded with numerous
23  discrepancies that had not been properly reconciled, and despite a mandatory restriction in
24  the swap that both parties must consent to its transfer. (Doc. 1, Ex. B ¶¶ 42–63). TradeCor
25  asserted in its claim that Plaintiffs had failed to make payments on the loans. (Doc. 7, Ex. 1).
26  It is not necessary for this court to determine whether the alleged conspiracy to transfer the
27  loans fraudulently and the failure to pay those loans back "arises out of the [same] transaction
28  or occurrence" under Arizona state law. *Levin v. Hindhaugh*, 167 Ariz. 110, 111, 804 P.2d

839, 840 (App. 1990). For the purposes of determining whether TradeCor was properly joined, it is enough to find that Plaintiffs have "a glimmer of hope" that a state court may so find, and the Court finds that they do. *Ballesteros*, 436 F. Supp. 2d at 1072. Relying by analogy on the standards of sanctioning a party under Rule 11, Plaintiffs' filings against TradeCor are clearly not "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). It is the province of the state courts of Arizona to determine whether BMO and TradeCor's defenses are adequate to defeat Plaintiffs' claims, and in a case where the parties are not completely diverse, this Court lacks the jurisdiction to rule in their stead. *See Murakami v. E.L. DuPont De Nemours and Co.* 191 F.3d 460 (table) 1999 WL 701902 (9th Cir. 1999) (rejecting fraudulent joinder when question of whether a Stipulation agreement applies "should have been decided by the courts of Hawaii").

The parties in this case are not completely diverse, and the case is therefore remanded to state court.

## CONCLUSION

The fact that Plaintiffs reference federal rules in their claim for violation of good faith and fair dealing does not pose a "contested and substantial federal question." *Grable & Sons*, 545 U.S. at 313. The forbearance agreement did not bar suits against TradeCor for actions TradeCor took after the agreement's final amendment. Plaintiffs have at least "a glimmer of hope" to succeed against TradeCor's claim preclusion defense, and therefore TradeCor is not fraudulently joined. *Ballesteros*, 436 F. Supp. 2d at 1072. Diversity is not complete and this Court is therefore without subject-matter jurisdiction to hear the substance of the claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. 9) is **granted** and this matter is **remanded to the Superior Court of Maricopa County**. Defendant TradeCor's Motion to Dismiss (Doc. 7) is therefore **dismissed as moot**.

DATED this 5th day of December, 2011.

G. Murray Snow
United States District Judge